

FILED

JUL 2 2 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          レハ从          DEPUTY

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICIO CHAMAT, | CASE NO. 07-CV-1010 W (JMA) |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT (Doc. No. 35)** |
| vs. | |
| HENRY M. PAULSON, JR., Secretary, DEPARTMENT OF THE TREASURY, | |
| Defendant. | |

On May 16, 2008 Plaintiff Mauricio Chamat ("Plaintiff"), proceeding *pro se*, filed a First Amended Complaint ("FAC") against Defendant Henry M. Paulson, Jr., Secretary, Department of the Treasury ("Defendant") alleging discrimination, harassment, and termination based on national origin, race, and age. (Doc. No. 31.) The FAC also contains allegations which, when viewed most favorably to Plaintiff, claim federal Privacy Act, HIPAA, and labor violations as well as common law tort claims for libel and defamation. (*Id.*) Pending before the Court is Defendant's motion to dismiss, or in the alternative, motion for summary judgment. (Doc. No. 35.) The Court takes the matter under submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** certain claims as listed below, and **DISMISSES** Plaintiff's FAC.

07cv1010W

# I.   BACKGROUND

Plaintiff Mauricio Chamat is a fifty year-old Hispanic male of Columbian national origin. (*Def.'s Mot.* Ex. 12, at 21.)  Plaintiff brings this employment suit against the United States Government ("Government"), represented here by Defendant Henry M. Paulson, Jr., Secretary, Department of the Treasury.

On January 24, 2005 the Internal Revenue Service ("IRS") hired Plaintiff as a Revenue Agent ("RA") trainee. (*Id.*)  Trainees are required to attend and pass at least two classroom training regimens referred to as "IBT1" and "IBT2", respectively. (*Def.'s Mot.* Ex. 2, 2:58–3:66.)  Trainees must receive a 70% grade or better to "pass" each IBT classroom session and advance to the next training. (*Id.* 3:68–74.)  Each IBT classroom training session is followed by "on the job" training (e.g., "OJT1" and "OJT2").  The OJT training is designed to emphasize anything the trainee struggled with during the preceding IBT session. (*Id.* 2:58–3:66.)  Like all other trainees, Plaintiff's employment was subject to a one-year probationary period, in which failure to perform his job adequately would subject him to immediate termination.  See 5 C.F.R. §§ 315.804, 315.803; Internal Revenue Manual § 6.300.1.15.1–16.1.[1]

Plaintiff's IBT1 performance report indicates that he got off to a promising start. (*Def.'s Mot.* Ex. 11, 221.)  Plaintiff passed 82% of his tested objectives and was recommended for "average" supervision. (*Id.*)  Plaintiff's subsequent OJT1 report, however, indicates that Plaintiff had trouble managing his workload. (*Def.'s Mot.* Ex. 11, 222.)  Although Plaintiff advanced to the IBT2 training segment, following his OJT1 training the IRS put Plaintiff on "maximum" supervision to help him catch up. (*Id.*)

Plaintiff's IBT2 training went less well. (*Def.'s Mot.* Ex. 6.)  Although Plaintiff displayed a good attitude, his IBT2 report indicates that he only passed 60% of the tested objectives and that he had trouble grasping certain areas of tax law. (*Id.*)  Although Plaintiff's superiors counseled him several times about his performance, on

---

[1]available at http://www.irs.gov/irm/part6/ch04s01.html#d0e4504

1 | June 29, 2005 Plaintiff's "Mid-Year Appraisal" showed him failing three Critical Job
2 | Elements: (1) Customer Satisfaction- Knowledge; (2) Customer Satisfaction-
3 | Application; and (3) Business Results- Efficiency. (*Def.'s Mot.* Ex. 9.) In an August 3,
4 | 2005 letter, the Government terminated Plaintiff's employment effective August 5,
5 | 2005, citing poor performance as the reason for termination. (*Def.'s Mot.* Ex. 10.)

6 | On August 8, 2005 Plaintiff initiated an Equal Employment Opportunity
7 | ("EEO") complaint by seeking EEO counseling within the Treasury Department.
8 | (*Def.'s Mot.* Ex. 11.) On September 29, 2005, following counseling, Plaintiff filed a
9 | formal EEO complaint against the IRS alleging race, national origin, and age
10 | discrimination. (*Def.'s Mot.* Ex. 12.) On July 14, 2006, after a full investigation, the
11 | IRS denied Plaintiff's claims in a Final Agency Decision ("FAD"). On March 19, 2007,
12 | after Plaintiff appealed the FAD, the Equal Employment Opportunity Commission
13 | Office of Federal Operations ("OFO") affirmed the FAD's holding. (*Def.'s Mot.* Ex.
14 | 17.)

15 | On June 4, 2007 Plaintiff commenced this action against Defendant alleging
16 | retaliation and discrimination based on race, age, and national origin, as well as claims
17 | that could be conceivably construed as Privacy Act or HIPPA or tort law violations.
18 | (Doc. No. 1.) On May 13, 2008 the Court granted the parties' joint motion to amend
19 | the pleadings. (Doc. No. 30.) On May 16, 2008 Plaintiff filed his FAC, the operative
20 | pleading in this action. (Doc. No. 31.) Comparing the complaint and FAC in the light
21 | most favorable to Plaintiff, the Court surmises that Plaintiff has dropped his
22 | "retaliation" claim and added allegations regarding an administrative investigation and
23 | violations of laws protecting federal collective bargaining rights. (*See* Doc. Nos. 1, 29,
24 | 31.) Otherwise, the FAC is nearly identical to the Complaint in all respects.

25 | On June 2, 2008 the Government moved for summary judgment or, in the
26 | alternative, moved to dismiss Plaintiff's FAC. (Doc. Nos. 34, 35.) On June 20, 2008
27 | Plaintiff opposed the Government's motion. (Doc. No. 37.) On June 30, 2008 the
28 | Government submitted its Reply. (Doc. No. 38.) Because the bulk of Plaintiff's claims
and allegations have remained unchanged from the start of litigation through discovery,

1 the Court grants summary judgment on the claims where the parties have had an
2 opportunity to fully develop the evidence.  Regarding the federal collective bargaining
3 claims, which are recent additions to Plaintiff's suit, the Court dismisses them without
4 prejudice under Federal Rule of Civil Procedure 12(b)(6).[2]

5

6 II.    LEGAL STANDARD
7        A.    Rule 56: Summary Judgment
8            Summary judgment is appropriate under Rule 56(c) where the moving party
9 demonstrates the absence of a genuine issue of material fact and entitlement to
10 judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477
11 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law,
12 it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
13 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about
14 a material fact is genuine if "the evidence is such that a reasonable jury could return a
15 verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

16            A party seeking summary judgment always bears the initial burden of establishing
17 the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving
18 party can satisfy this burden in two ways: (1) by presenting evidence that negates an
19 essential element of the nonmoving party's case; or (2) by demonstrating that the
20 nonmoving party failed to make a showing sufficient to establish an element essential
21 to that party's case on which that party will bear the burden of proof at trial.  Id. at 322-
22 23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary
23 judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630
24 (9th Cir. 1987).

25            "The district court may limit its review to the documents submitted for the
26 purpose of summary judgment and those parts of the record specifically referenced

27 _____

28     [2]Although Defendant answered the original complaint, Defendant's instant motion to dismiss/motion for summary judgment is Defendant's first response to Plaintiff's FAC. Therefore, dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 12(c).

07cv1010W

1   therein." <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1030 (9th Cir.

2   2001). Therefore, the court is not obligated "to scour the record in search of a genuine

3   issue of triable fact." <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (<u>citing</u>

4   <u>Richards v. Combined Ins. Co.</u>, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party

5   fails to discharge this initial burden, summary judgment must be denied and the court

6   need not consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398

7   U.S. 144, 159-60 (1970).

8       If the moving party meets this initial burden, the nonmoving party cannot defeat

9   summary judgment merely by demonstrating "that there is some metaphysical doubt as

10  to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475

11  U.S. 574, 586 (1986); <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th

12  Cir. 1995) (<u>citing</u> <u>Anderson</u>, 477 U.S. at 252) ("The mere existence of a scintilla of

13  evidence in support of the nonmoving party's position is not sufficient."). Rather, the

14  nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the

15  depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

16  showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 324 (<u>quoting</u> Fed.

17  R. Civ. P. 56(e)).

18      When making this determination, the court must view all inferences drawn from

19  the underlying facts in the light most favorable to the nonmoving party. <u>See</u>

20  <u>Matsushita</u>, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and

21  the drawing of legitimate inferences from the facts are jury functions, not those of a

22  judge, [when] he [or she] is ruling on a motion for summary judgment." <u>Anderson</u>, 477

23  U.S. at 255.

24      Rule 56(d) provides for partial summary judgment. <u>See</u> Fed. R. Civ. P. 56(d)

25  ("[T]he court...shall if practicable ascertain what material facts exist without substantial

26  controversy and what material facts are actually and in good faith controverted.").

27  Under Rule 56(d), the court may grant summary judgment on less than the non-moving

28  party's whole claim. <u>Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.</u>,

313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a

1   mechanism through which the Court deems certain issues established before trial. Lies
2   v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal
3   Practice ¶ 56.20 (3.-2) (2d ed. 1976)). "The procedure was intended to avoid a useless
4   trial of facts and issues over which there was really never any controversy and which
5   would tend to confuse and complicate a lawsuit." Id.

6

7   **B.   Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim**

8        The Court must dismiss a cause of action for failure to state a claim upon which
9   relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under  Rule
10  12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp.
11  Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint,
12  "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth
13  of all factual allegations and must "construe them in the light most favorable to the
14  nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also
15  Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

16       As the Supreme Court recently explained, "While a complaint attacked by a Rule
17  12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's
18  obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels
19  and conclusions, and a formulaic recitation of the elements of a cause of action will not
20  do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the
21  allegations in the complaint "must be enough to raise a right to relief above the
22  speculative level." Id. at 1964–65. A complaint may be dismissed as a matter of law
23  either for lack of a cognizable legal theory or for insufficient facts under a cognizable
24  theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

25

26  **III.   DISCUSSION**

27       As a threshold matter, several issues make the instant motion difficult from the
28  Court's perspective. First, Plaintiff appears *pro se* and, while he does an admirable job
    navigating the litigation process,  his FAC does not parse his allegations into discreet

1    causes of action.  Likewise, his opposition brief mostly reiterates his allegations and
2    contains no legal analysis.  Thus, the Court views Plaintiff's FAC generously, and
3    reviews all claims which could reasonably be alleged.

4         Second, as previously mentioned, although Plaintiff amended his complaint
5    somewhat recently, the bulk of his claims and allegations have remained unchanged
6    from the start of litigation.  As both parties have had ample time to propound discovery,
7    the Court grants summary judgment on the claims that the parties have had an
8    opportunity to investigate.  Regarding the federal labor union claims, which are recent
9    additions to Plaintiff's suit, the Court dismisses them without prejudice under Federal
10   Rule of Civil Procedure 12(b)(6).

11

12   **A.    The Government Had Legitimate Reasons For Terminating Plaintiff's**
13   **Employment and Plaintiff Has Not Shown That These Reasons Were**
14   **a Pretext For Disparate Treatment Based on Race, National Origin, or**
15   **Age.**

16        The Government argues that summary judgment is appropriate because Plaintiff
17   was not objectively qualified for the position of RA and thus cannot establish a *prima*
18   *facie* case of race, national origin, or age discrimination.  (*Def.'s Mot.* 3–5.)  Basically,
19   the Government argues that it had legitimate reasons to terminate Plaintiff's
20   employment.  (*Id.*)

21        Plaintiff, in response, does not contest the fact that he failed to meet certain
22   objective job qualifications.  (*Pl.'s Opp'n* 6; Ex. 5 issue 2.)  Instead, Plaintiff takes issue
23   with *how* the job qualifications were tested and contends that, despite his failing scores,
24   he is well-qualified for the position of Revenue Agent.  (*Pl.'s Opp'n* 6–11.)  Also
25   sprinkled throughout Plaintiff's papers are assertions that he was given mixed
26   instructions and made to feel inferior for underperforming.  (*Pl.'s Opp'n* 6–11.)

27        Title VII of the Civil Rights Act prohibits discrimination in federal employment
28   based on race, color, religion, sex and national origin.  42 U.S.C. § 2000e-16.  The Age
     Discrimination in Employment Act ("ADEA") provides that all personnel decisions

1  affecting federal employees who are at least forty (40) years old shall be made free from

2  discrimination based on age. 29 U.S.C. § 633a.

3       Disparate treatment claims based on race, national origin, and age are all subject

4  to the burden shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792

5  (1973). <u>See</u> <u>Chuang v. University of Cal. Davis</u>, 225 F.3d 1115 (9th Cir. 2000) (using

6  <u>McDonnell Douglas</u> framework to analyze Title VII race and national origin

7  discrimination claims); <u>Ritter v. Hughes</u>, 58 F.3d 454, 546 (9th Cir. 1995) (using

8  <u>McDonnell Douglas</u> framework for ADEA age discrimination claim).   Under

9  <u>McDonnell Douglas</u>, the employee must first establish a prima facie case of

10  discrimination. <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008). If he

11  does, the employer has the burden of articulating a legitimate, nondiscriminatory reason

12  for the challenged action. <u>Id.</u> If the employer satisfies this burden, the employee must

13  show that the employer's reason is pretextual.   <u>Id.</u>   An employee shows pretext by

14  offering evidence, direct or circumstantial, 'that a discriminatory reason more likely

15  motivated the employer' to make the challenged employment decision. <u>Davis</u>, 520 F.3d

16  at 1091 (citing <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 (9th Cir.

17  2006)). Alternatively, an employee may offer evidence "that the employer's proffered

18  explanation is unworthy of credence." <u>Id.</u>

19       Here, giving the *pro se* Plaintiff every benefit of the doubt, the Court assumes

20  without deciding that Plaintiff has met his *prima facie* burden of showing disparate

21  treatment. The Government, however, has articulated legitimate, non-discriminatory

22  reasons for terminating him.  First, it is undisputed that Plaintiff's IBT2 report dated

23  May 19, 2005 shows him passing only 60% of the objectives—less than the 70%

24  required. (*Def.'s Mot.* Ex.6.) At the time, Plaintiff's lead instructor did not recommend

25  advancing Plaintiff to the next training segment, and the agency placed Plaintiff on

26  "maximum supervision" in an attempt to bring him up to speed.   (*Id.*)  Second,

27  Plaintiff's Mid-Year Appraisal dated June 24, 2005 indicates that Plaintiff failed three

28  out of five Critical Job Elements and had trouble grasping certain important areas of tax

law. (*Def.'s Mot.* Ex. 9.)  Nowhere does Plaintiff dispute that he failed to measure up

1    to the Government's objective criteria for remaining in the IRS's employ.[3] As Plaintiff

2    was still within his probationary period, the Government was within its rights to

3    legitimately terminate him for poor performance.[4]

4        Plaintiff provides no facts and only self-serving arguments in attempting to show

5    that the Government's reasons were merely a pretext for racial, national origin, and/or

6    age discrimination.  For instance, Plaintiff argues that the IRS's testing methodologies

7    and criteria were flawed in that they discriminated against older people.  (*Pl.'s Opp'n*

8    6–7.)  Specifically, Plaintiff contends that his age affects his ability to remember and

9    recall large amounts of information required to pass IBT training, but that it is not

10   necessary to memorize information in order to perform RA job tasks.  (*Pl.'s Opp'n* 6.)

11   How the IRS should test to determine which trainees make suitable RAs, however, is

12   not under the review of this Court.  Further, Plaintiff presents no facts for a reasonable

13   jury to conclude that the IRS purposefully tests its RAs in such a way as to discriminate

14   against those over forty.[5]  Instead, all undisputed evidence indicates that Plaintiff could

15   not pass the objective criteria needed to become an RA; there is no evidence suggesting

16   that the Government terminated his employment on any basis other than poor

17   performance.

18       As with age, Plaintiff produces no evidence to suggest that he was terminated on

19   account of his race or national origin, only baldly concluding that "[t]he real reason for

20

21       [3]For the same reasons, it is doubtful that Plaintiff has even met his *prima facie* burden of showing that he was objectively qualified for the RA position.  See Davis, 520 F.3d at 1089

22   (laying out factors for *prima facie* case, the second of which is a showing that an employee was qualified for his position); see also Lynn v. Regents of University of California, 656 F.2d 1337,

23   1342 (9th Cir. 1981) (holding that an employee is qualified for a position where he meets the requisite objective criteria).

24       [4]Plaintiff also claims that any argument that he was unqualified to be an RA is moot, considering that the IRS found him qualified when they offered him the job.  (*Pl.'s Opp'n* 9; Ex.

25   10.)  This argument, however, ignores the one-year probationary period for new hires and the training benchmarks needed to retain employment.  (See *Def.'s Mot.* Ex. 2 2:58–3:66; 5 C.F.R.

26   §§ 315.804, 315.803.)

27       [5]Plaintiff contends that he "will present expert testimony from a Ph.D in Accounting in which the subject test questions will be examined for clarity, accuracy, fairness and

28   educational and pedagogical value."  (*Pl.'s Opp'n* 7.)  Even if this expert testimony were relevant to his cause(s) of action, Plaintiff needs evidence *now*, not a promise to produce evidence at trial, to defeat a motion for summary judgment.

- 9 -

1  termination was discriminatory in violation of Title VII and ADEA." (*Pl.'s Opp'n* 10.)
2  Simply because Plaintiff is a fifty year-old Hispanic of Columbian national origin does
3  not turn his termination for cause into discrimination. Indeed, the record reflects that
4  Plaintiff's reviewers generally liked him and were supportive of his efforts to succeed,
5  but that ultimately he did not possess the objective qualifications to become a RA.
6  (See, *e.g.*, *Def.'s Mot.* Ex. 2, 4:111–113, 6:163–166; Ex. 5; Ex. 6 4:19–30.) Simply,
7  Plaintiff offers nothing to suggest that race or national origin had anything to do with
8  his termination.

9      Plaintiff next points to negative comments in some of his evaluations. None of
10 these negative comments, however, reflect any animus towards his race, age, or national
11 origin. Rather, any negative comment is in response to a specific, job-related metric at
12 which Plaintiff failed to succeed. Plaintiff also contends that he was given mixed
13 instructions about prioritizing work. (*Pl.'s Opp'n* 7–8.) Even if he did, Plaintiff does not
14 point the Court to any evidence suggesting that his supervisors' allegedly cryptic
15 instructions were merely a smokescreen for disparate treatment based on race, national
16 origin, or age. Because the Court finds no evidence, much less any genuine issues of
17 material fact, concerning Plaintiff's Title VII and ADEA claims, the Court **GRANTS**
18 Defendant's motion for summary judgment and **DENIES** Plaintiff's disparate treatment
19 claims under Title VII and the ADEA.

20

21      **B.    Plaintiff Has Not Established That He Was Subjected to a Hostile**
22             **Work Environment Based on a Protected Trait**

23      The Government argues that Plaintiff has presented no evidence that he was
24 subjected to the type of abuse necessary to support a hostile work environment claim
25 based on race, national origin, or anything else. (*Def.'s Mot.* 5–6.) Plaintiff contends,
26 in response, that his performance reports were conducted in a way to make Plaintiff feel
27 inferior, and that he was once told "not to speak Spanish" in the general work area.
28 (*Pl.'s Opp'n* 4–6, 7–9.)

       Whether an environment is "abusive" or "hostile" can be determined only by

1   looking at all the circumstances.  Harris v. Forklift Sys., 510 U.S. 517, 523 (1993).

2   Factors include: (1) the frequency of the conduct; (2) its severity; (3) whether it is

3   physically threatening or humiliating, or a mere offensive utterance; and (4) whether

4   it unreasonably interferes with an employee's work performance.  Id.  To prevail in a

5   hostile work environment claim premised on race and/or national origin, a plaintiff

6   must show: (1) that he was subjected to verbal or physical conduct based on his race

7   or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was

8   sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and

9   create an abusive work environment.  Galdemez v. Potter, 415 F.3d 1015, 1023 (9th

10  Cir. 2005).   To satisfy the third element, a plaintiff must show that his work

11  environment was both subjectively and objectively hostile.  See McGinest v. GTE Serv.

12  Corp., 360 F.3d 1103, 1113 (9th Cir. 2004).  Taken together, the legal standard filters

13  out complaints centering on the ordinary tribulations of the workplace.  Faragher v.

14  City of Boca Raton, 524 US. 775, 788 (1998).

15      Here, the only allegations that could possibly support a hostile work environment

16  claim are Plaintiff's statements that his performance evaluations were conducted in a

17  way to make him feel inferior and that he was once told not to speak Spanish in the

18  workplace.  Like his disparate treatment claims, however, Plaintiff directs the Court to

19  no evidence suggesting that his negative performance evaluations had anything to do

20  with his race or national origin.   Although the reports critiqued Plaintiff's job

21  performance, any negative comments were properly confined to his inability to do his

22  tasks in an objectively satisfactory manner.  As for Plaintiff's assertion that he was

23  scolded for speaking Spanish in the general work area, Plaintiff alleges that this only

24  happened once. No matter what Plaintiff might subjectively believe, no reasonable jury

25  could find that the request was frequent or pervasive or severe enough to be objectively

26  actionable.   Accordingly, the Court **GRANTS** Defendant's motion for summary

27  judgment and **DENIES** Plaintiff's hostile work environment claim.

28  ///

- 11 -

07cv1010W

1    C.   **<u>Plaintiff's Tort Claims Are Either Unexhausted or Barred by Sovereign</u>**
2         **<u>Immunity</u>**

3    The Government argues that Plaintiff has not alleged exhaustion of any potential
4    tort claims that the FAC might raise, and that, regardless, any intentional torts are
5    barred by sovereign immunity. (*Def.'s Mot.* 7–9.)  Plaintiff contends, in response, that
6    the Government has been on notice of his claims due to his EEOC "right to sue" letter.
7    (*Pl.'s Opp'n* 2.)  As noted, Plaintiff's FAC merely refers in passing to tortious activities
8    and does not parse out his allegations into distinct tort claims.

9    The doctrine of sovereign immunity bars actions against the United States except
10   where it clearly and explicitly consents to be sued.  <u>United States v. Testan</u>, 424 U.S.
11   392, 399 (1976).  The Federal Tort Claims Act ("FTCA") waives the United States'
12   immunity for certain torts.  28 U.S.C. §§ 2671 *et. seq.*  Under the FTCA, tort claims
13   relating to the acts of federal employees taken in the course of their employment may
14   only be brought against the United States of America.  28 U.S.C. § 2679(a),(b),(d).
15   Federal employees retain broad immunity from suit under state tort law, and an FTCA
16   action against the Government is the exclusive remedy.  <u>United States v. Smith</u>, 499
17   U.S. 160, 163 (1991).

18   The FTCA also requires that plaintiffs first exhaust administrative remedies by
19   presenting claims to the appropriate federal agency.  28 U.S.C. § 2675(a).  This claim
20   requirement is jurisdictional in nature and cannot be waived.  <u>Burns v. United States</u>,
21   764 F.2d 722, 723 (9th Cir. 1985).  While the FTCA provides an avenue for redress for
22   certain torts, the Government still retains sovereign immunity for intentional torts like
23   defamation.  28 U.S.C. § 2680(h).

24   Here, Plaintiff has not alleged that he complied with FTCA requirements before
25   filing his FAC and does not argue that his intentional misrepresentation or invasion of
26   privacy claims remain valid despite 28 U.S.C. § 2680's retention of sovereign immunity
27   for most intentional torts.  Additionally, Plaintiff has named Henry Paulson, Jr., as the
28   sole defendant, and not the United States of America.  Although Plaintiff argues that
     the Government was "on notice" of his tort claims (*Pl.'s Opp'n* 2), the law is clear that

- 12 -                                    07cv1010W

1  mere Government awareness does not satisfy the statutory claim requirement. <u>See</u>, <u>e.g.</u>,
2  <u>Brady v. United States</u>, 211 F.3d 499, 503 (9th Cir. 2000) (holding that dismissed
3  FTCA suit did not satisfy FTCA claim requirement); <u>Burns v. United States</u>, 764 F.2d
4  722, 724 (9th Cir. 1985) (holding letter to Senator, forwarded to Agency, insufficient).
5  Rather, an actual agency claim is necessary to prevent an unnecessary burdening of the
6  courts.  <u>Brady</u>, 211 F.3d at 503.  Because Plaintiff does not argue or allege that he
7  complied with the FTCA claim presentation requirement, and because his intentional
8  torts are barred by sovereign immunity, the Court **GRANTS** Defendant's motion and
9  **DENIES** any and all tort claims Plaintiff's FAC potentially raises.
10
11     **D.     <u>Plaintiff Cannot State a Viable HIPAA or Privacy Act Claim</u>**
12       Plaintiff's FAC alleges that at the time he was terminated, his manager illegally
13  searched his personal belongings, including his tax returns and medical records.  (*FAC*
14  2.) Defendant argues that neither of Plaintiff's references to HIPAA or the Privacy Act
15  can support a claim for these purported violations.  (*Def.'s Mot.* 9.)  Plaintiff does not
16  counter this argument, but argues that union representation would have prevented
17  these supposed transgressions.  (*Pl.'s Opp'n* 3.)
18       The Privacy Act provides that district courts have subject matter jurisdiction
19  over an individual's civil action against an agency whenever an agency:
20     (A) makes a determination under 5 U.S.C. § 552a(d)(3) not to amend an
        individual's record in accordance with his request, or fails to make such
21      review in conformity with that subsection; (B) refuses to comply with an
        individual request under § 552a(d)(1); (C) fails to maintain any record
22      concerning any individual with such accuracy, relevance, timeliness, and
        completeness as is necessary to assure fairness in any determination
23      relating to the qualifications, character, rights, or opportunities of, or
        benefits to the individual that may be made on the basis of such record,
24      and consequently a determination is made which is adverse to the
        individual; or (D) fails to comply with any other provision of this section,
25      or any rule promulgated there under, in such a way as to have an adverse
26      effect on an individual. . .
27
28

<u>Logan v. Dep't of Veterans Affairs</u>, 357 F. Supp. 2d 149, 153 (D.D.C. 2004).  To pursue

- 13 -                                             07cv1010W

1   a claim for injunctive relief and monetary damages based on improper disclosure in
2   violation of the Privacy Act, a plaintiff must prove four elements: (1) the disclosed
3   information is a "record" contained within a "system of records"; (2) the agency
4   improperly disclosed the information; (3) the disclosure was willful or intentional; and
5   (4) the disclosure adversely affected the plaintiff. Logan, 357 F. Supp. 2d at 154.

6        HIPAA provides for both civil and criminal penalties to be imposed upon
7   individuals who improperly handle or disclose individually identifiable health
8   information. Id. at 155 (citing 42 U.S.C. §§ 1320d-5–d-6). However, the law
9   specifically indicates that the Secretary of Health and Human Services shall pursue the
10  action against an alleged offender, not a private individual. Logan, 357 F. Supp. 2d at
11  155. Therefore, causes of action brought by private individuals must be dismissed. Id.

12       Here, Plaintiff's claims that his manager improperly searched his tax returns and
13  medical records are not actionable under the Privacy Act or HIPAA. Under the
14  Privacy Act, Plaintiff has not shown that either his tax returns or medical records were
15  "records" contained within a "system of records." Nor has Plaintiff alleged that the
16  disclosure adversely affected him. As for HIPAA, the law is clear that the Act creates
17  neither an express nor implied private cause of action. See O'Donnell v. Blue Cross
18  Blue Shield of Wyo., 173 F. Supp. 2d 1176, 1179–80 (D. Wyo. 2001). Because
19  Plaintiff's allegations concerning his manager's actions are not legally actionable, the
20  Court **GRANTS** Defendant's motion and **DENIES** any and all claims relating to the
21  Privacy Act or HIPAA.

22

23       E.    Plaintiff's Union Grievance Claims Are Unexhausted or Lack
24               Jurisdiction

25       Defendant argues that the union claims first raised in Plaintiff's FAC are
26  unexhausted and must be dismissed. (Def.'s Mot. 9.) Defendant also argues that
27  Plaintiff's claim that he was entitled to union representation at his termination meeting
28  lacks jurisdiction because such claims are subject to the exclusive jurisdiction of the
    Federal Labor Relations Authority. (Def.'s Reply 3.) Plaintiff's opposition simply

- 14 -

1 │ expands on his earlier allegations concerning the violation of his collective bargaining

2 │ rights.  (Pl.'s Opp'n 2–4.)

3 │      Courts have jurisdiction to enforce collective bargaining agreements; but where

4 │ the contract provides grievance and arbitration procedures, those procedures must first

5 │ be exhausted and courts must order resort to the private settlement mechanisms

6 │ without dealing with the merits of the dispute.  <u>United Paperworkers Int'l Union v.

7 │ Misco, Inc.</u>, 484 U.S. 29, 37 (1987).

8 │      In this case, nowhere does Plaintiff allege that he exhausted his union grievances,

9 │ argue that his union contract does not provide grievance and arbitration procedures

10 │ with which to enforce his collective bargaining rights, or rebut Defendant's argument

11 │ that the FLRA entertains exclusive jurisdiction over his claims.  Accordingly, the Court

12 │ **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's collective bargaining

13 │ claims.[6]

14 │

15 │     **H.**   <u>**Plaintiff is Not Entitled To Substantive Relief Based on the Delay in**</u>

16 │        <u>**the Agency Investigation**</u>

17 │      Defendant argues that Plaintiff is not entitled to relief on the basis of the

18 │ Agency's untimely investigation of Plaintiff's EEO complaint.  (Def.'s Mot. 10.)

19 │ Plaintiff's opposition does not contest this.  As these issues have already been decided,

20 │ the Court **GRANTS** Defendant's motion for summary judgment on this issue for the

21 │ same reasons outlined in the Court's March 18, 2008 Order Denying Plaintiff's Motion

22 │ Requesting Job Reinstatement and Back Pay, incorporated herein by reference.  (Doc.

23 │ No. 26.)

24 │ ///

25 │ ///

26 │ ///

27 │ ///

28 │

---

[6]Should Plaintiff pursue his union claims again, the Court expects Defendant to do a better job researching and presenting the relevant law.

07cv1010W

Case 3:07-cv-01010-W-JMA   Document 39   Filed 07/22/08   PageID.1103   Page 16 of 17

I.   **Plaintiff's Claim That He Was Not Paid For His Accrued Leave Lacks
     Support**

Defendant argues that Plaintiff was compensated for all accrued leave, and to the
extent that he was not, Plaintiff provides no authority which allows the Court to assume
jurisdiction over such a personnel matter. (*Def.'s Mot.* 10.)  Plaintiff's opposition does
not contest this.  Because the record suggests that Plaintiff was in fact compensated for
all due time (*Def.'s Mot.* Ex. 20), and Plaintiff offers no evidence to the contrary, the
Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's claim for accrued leave.

IV.   CONCLUSION

Even giving Plaintiff every benefit of the doubt, Plaintiff has not presented
evidence suggesting that there are any genuine issues of material fact sufficient to
overcome a motion for summary judgment.  Indeed, all the evidence suggests that,
while Plaintiff was well-meaning, he was objectively unqualified to be a Revenue Agent.
Thus, the Government was within its rights to terminate Plaintiff during his
probationary period.  Plaintiff has failed to present any specific facts that his race, age,
national origin, and an isolated workplace incident had anything to do with it.

///
///
///
///
///
///
///
///
///
///
///
///

- 16 -

07cv1010W

1    For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary

2  judgment and **DENIES** Plaintiff's disparate treatment, hostile work environment, tort,

3  Privacy Act, HIPAA, delayed agency investigation, and accrued leave claims.  Because

4  Plaintiff only recently amended his complaint to include the labor union claims, the

5  Court **GRANTS** Defendant's motion to dismiss and **DISMISSES** Plaintiff's labor union

6  claims.  Should Plaintiff wish to amend his complaint and fix the deficiencies noted

7  above, he may do so by **August 18, 2008**.  Plaintiff is on notice, however, that failure

8  to adequately plead a claim or legally oppose a future motion may result in a dismissal

9  with prejudice.

10

11    **IT IS SO ORDERED.**

12

13  Dated: July 21, 2008

14                                          Hon. THOMAS J. WHELAN
                                           United States District Court
15                                          Southern District of California

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv1010W