1
2
3
4
5

> **FILED**
>
> MAR 2 3 2009
>
> CLERK, U.S. DISTRICT COURT
> SOUTHERN DISTRICT OF CALIFORNIA
> BY      *C P*            DEPUTY

6      ## UNITED STATES DISTRICT COURT

7      ## SOUTHERN DISTRICT OF CALIFORNIA

8

9      MAURICIO CHAMAT,                    CASE NO.07-CV-1010 W (JMA)

10                          Plaintiff,     **ORDER:**

11

12         vs.                            **1) GRANTING DEFENDANT'S
                                           MOTION TO DISMISS AND**
13                                         **DENYING AS MOOT
                                           DEFENDANT'S MOTION FOR**
14                                         **SUMMARY JUDGMENT**
                                           **(Doc. No. 54.)**
15     HENRY M. PAULSON, JR.,
16     Secretary, DEPARTMENT OF THE        **2) DENYING PLAINTIFF'S
       TREASURY,                           MOTION TO COMPEL**
17                                         **ARBITRATION**
18                          Defendant.     **(Doc. No. 56.)**

19

20         On August 21, 2008, Plaintiff Mauricio Chamat ("Plaintiff") filed his Second

21     Amended Complaint ("SAC") against Henry Paulson, Jr., in his official capacity as

22     Secretary of the Department of the Treasury ("Defendant"). On September 9, 2008,

23     Defendant filed the instant motion to dismiss, or in the alternative, motion for summary

24     judgment. In response, Plaintiff filed an opposition and a motion to compel arbitration.

25     The Court decides the matter on the papers submitted and without oral argument

26     pursuant to Civil Local Rule 7.1(d)(1). For the following reasons, the Court **GRANTS**

27     Defendant's motion to dismiss, and **DENIES** as moot Defendant's alternative motion

28     for summary judgment, and **DENIES** Plaintiff's motion to compel arbitration.

I.   BACKGROUND

As an initial matter, most of the documents supporting the factual circumstances surrounding this case were filed by the Defendant in a previous motion. (See Doc. No. 35.) Defendant has asked that this Court take judicial notice of these previously filed documents. (*Def.'s Mot.* at 1:n 2.)   That request has not been opposed.   Good cause appearing, the Court takes judicial notice of the exhibits. Further, the facts listed below have been taken from Defendant's moving papers and are not in dispute.

Plaintiff Mauricio Chamat is an approximately fifty year-old Hispanic male of Columbian origin who worked for Defendant Department of the Treasury's Internal Revenue Service ("IRS") from January 24, 2005, until August 5, 2005, when he was officially terminated.   When Plaintiff was hired, he was informed of the "Critical Job Elements" and other requirements for continued employment in his position.   Among these requirements were classroom objectives, of which Plaintiff was required to meet 70% or more during the initial two phases of training.   Plaintiff was also provided with a memorandum dated May 14, 2005, which defined expectations during the training period.

On June 29, 2005, Plaintiff received a Mid Year Appraisal from his manager. The appraisal noted that Plaintiff was failing the following three "Critical Job Elements:" (1) Customer Satisfaction – Knowledge; (2) Customer Satisfaction – Application; and (3) Business Results – Efficiency.   On August 5, 2005, Plaintiff was officially terminated.

Plaintiff first sought administrative relief from the Treasury Department and Equal Employment Opportunity Commission ("EEOC").   On September 29, 2005, Plaintiff filed a formal complaint with Defendant Treasury Department. The complaint alleged that Plaintiff was discriminated against on the basis of race, national origin, and age. The IRS denied Plaintiff's claims in a Final Agency Decision dated July 14, 2006. Plaintiff then appealed the agency decision to the EEOC.   On March 19, 2007, the EEOC held that Plaintiff had not been discriminated against on any of the bases alleged.

07cv1010

On June 4, 2007, Plaintiff filed this action for employment discrimination, harassment, and termination.  On May 16, 2008, Plaintiff filed a First Amended Complaint ("FAC"), alleging claims for breach of a union collective bargaining agreement ("CBA"), violations of discrimination laws, various torts, violation of the Privacy Act and Health Insurance Portability and Accountability Act ("HIPPA"), and failure to pay accrued leave.  (Doc. No. 31.)  On July 22, 2008, the Court granted summary judgment in Defendant's favor on all claims except for the CBA claims, which were dismissed with leave to amend. (Doc. No. 39.)

On August 21, 2008, Plaintiff filed the SAC alleging violations of the CBA between the IRS and the National Treasury Employees Union ("NTEU").  On September 9, 2008, Defendant filed the instant motion to dismiss, or in the alternative, motion for summary judgment.  (Doc. No. 54.)  On September 16, 2008, Plaintiff filed a response to Defendant's motion.  (Doc. No. 56.)

## II.   LEGAL STANDARD

### A.   Motions to Dismiss Under Rule 12(b)(1).

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter[.]" Fed. R. Civ. P. 12(b)(1).  Although the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary jurisdictional facts. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)); see also Marriot Intern., Inc. v. Mitsui Trust & Banking Co., Ltd., 13 F. Supp. 2d 1059, 1061 (9th. Cir. 1998).

-3-

1    Jurisdiction cannot be waived, and the court is under a continuing duty to dismiss
2    an action whenever it appears the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); <u>see</u>
3    <u>also</u> <u>Snell v. Cleveland</u>, 316 F.3d 822, 826 (9th Cir. 2002). In ruling on a challenge to
4    subject matter jurisdiction, the district court is ordinarily free to hear evidence
5    regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes
6    where necessary. <u>See</u> <u>Thornhill</u>, 594 F.2d at 733. In such circumstances, "[n]o
7    presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed
8    material facts will not preclude the trial court from evaluating for itself the merits of
9    jurisdictional claims." <u>Id</u>.

10

11   **B.   <u>Motions to Dismiss Under Rule 12(b)(6).</u>**

12   The court must dismiss a cause of action for failure to state a claim upon which
13   relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6)
14   tests the complaint's sufficiency. <u>See</u> <u>North Star Int'l. v. Arizona Corp. Comm'n.</u>, 720
15   F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if
16   doubtful in fact," are assumed to be true. <u>Id</u>. The court must assume the truth of all
17   factual allegations and must "construe them in the light most favorable to the
18   nonmoving party." <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 895 (9th Cir. 2002); <u>see also</u>
19   <u>Walleri v. Fed. Home Loan Bank of Seattle</u>, 83 F.3d 1575, 1580 (9th Cir. 1996).

20   As the Supreme Court recently explained, "[w]hile a complaint attacked by a
21   Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's
22   obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels
23   and conclusions, and a formulaic recitation of the elements of a cause of action will not
24   do." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964 (2007). Instead, the
25   allegations in the complaint "must be enough to raise a right to relief above the
26   speculative level." <u>Id</u>. at 1964–65. A complaint may be dismissed as a matter of law
27   either for lack of a cognizable legal theory or for insufficient facts under a cognizable
28   theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).

-4-

1    Generally, the court may not consider material outside the complaint when

2    ruling on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

3    F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider any documents

4    specifically identified in the complaint whose authenticity is not questioned by the

5    parties.  Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).  Moreover, the

6    court may consider the full text of those documents, even when the complaint quotes

7    only selected portions.  Id.  The court may also consider material properly subject to

8    judicial notice without converting the motion into a motion for summary judgment.

9    Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer

10   Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria

11   Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

12

13   C.    **Motion to Compel Arbitration**

14   Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall

15   be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in

16   equity for the revocation of any contract." 9 U.S.C. § 2.  Once the Court has

17   determined that an arbitration agreement involves a transaction involving interstate

18   commerce, thereby falling under the FAA, the Court's only role is to determine

19   whether a valid arbitration agreement exists and whether the scope of the parties'

20   dispute falls within that agreement.  9 U.S.C. § 4; Chiron Corp. v. Ortho Diagnostic

21   Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  "Under § 4 of the FAA, a district court

22   must issue an order compelling arbitration if the following two-pronged test is satisfied:

23   (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the

24   dispute at issue." United Computer Systems v. AT & T Corp., 298 F.3d 756, 766 (9th

25   Cir. 2002).

26   The FAA represents the "liberal federal policy favoring arbitration agreements"

27   and "any doubts concerning the scope of arbitrable issues should be resolved in favor

28   of arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460

1  U.S. 1, 24-25 (1983). Notwithstanding the liberal policy favoring arbitration, by
2  entering into an arbitration agreement, two parties are entering into a contract. <u>Volt
3  Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>,
4  489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not
5  coercion"). Thus, as with any contract, an arbitration agreement is "subject to all
6  defenses to enforcement that apply to contracts generally." <u>Ingle v. Circuit City Stores,
7  Inc.</u>, 328 F.3d 1165, 1170 (9th Cir. 2003.)

8

9  **III.   DISCUSSION**

10  As a threshold matter, several issues make the instant motion difficult from the
11  Court's perspective. Plaintiff appears *pro se* and, while he does an admirable job
12  navigating the litigation process, his SAC does not parse his allegations into discreet
13  causes of action nor does it limit itself to the union claim that remains per this Court's
14  previous order. (See Doc. No. 39.) Mostly, the SAC repeats previous allegations to
15  which this Court has already granted summary judgment. In any event, for the reasons
16  that follow, the Court dismisses Plaintiff's claim with prejudice under Federal Rule of
17  Civil Procedure 12(b)(1) and denies Plaintiff's request for arbitration.

18

19  **A.   Motion to Dismiss**

20  Plaintiff claims that Defendant has violated the Collective Bargaining Agreement
21  ("CBA") entered into between the IRS and the NTEU.[1] Defendant argues that the
22  Civil Service Reform Act ("CSRA") preempts Plaintiff's complaint. For the following
23  reasons, the Court finds that the CSRA preempts Plaintiff's claims under the CBA.

24

---

25  [1]The Court hereby takes judicial notice of the Collective Bargaining Agreement
26  ("CBA") attached to Defendant's motion. See <u>Fecht</u>, 70 F.3d at 1080 n.1 (holding
27  that the court may consider any documents specifically identified in the complaint
whose authenticity is not questioned by the parties). Plaintiff actually indicates that the
28  CBA provided by Defendant "appears to be a faithful reproduction of the original."
(*Pltf.'s Opp* at 2 n.1.)

07cv1010

1    A district court is precluded from exercising subject matter jurisdiction when

2   Congress intended to preclude review. Thunder Basin Coal Co. v. Reich, 510 U.S. 200,

3   207 (1994).   The CSRA, enacted in 1978, created an elaborate framework for

4   evaluating adverse personnel decisions, established standards for review of such actions

5   by the Merit Systems Protection Board ("MSPB"), and provided for judicial review of

6   MSPB decisions in the Court of Claims or in the regional courts of appeals. Lindahl v.

7   OPM, 470 U.S. 768, 774 (1985).  The CSRA is an integrated and preemptive scheme

8   designed to "balance the legitimate interests of various categories of federal employees

9   with the needs of sound and efficient administration" and wholly occupy the regulatory

10  field.  United States v. Fausto, 484 U.S 439, 445 (1988).

11    In order to determine whether jurisdiction exists under the CSRA, the court

12  must first determine where the plaintiff's claims fit within the statutory scheme, since

13  the CSRA provides different treatment for varying grievances.  Whitman v. Dep't of

14  Transp., 547 U.S. 512, 514 (2006).  The court must then address whether the CSRA

15  section governing the employee's adverse action precludes the employee from pursuing

16  remedies outside the CSRA.  Id.

17    In the instant case, Plaintiff was removed from his probationary period ostensibly

18  due to poor job performance.  (Def.'s Mot. at 2.)  Chapter 43 of the CSRA governs

19  removal or demotion actions based on unacceptable job performance.  5 U.S.C. §§

20  4301-4315; see also Fausto, 484 U.S. at 445 ("Chapter 43 of the CSRA governs

21  personnel actions based on unacceptable job performance.").  However, probationary

22  employees are specifically excluded from Chapter 43. 5 U.S.C. § 4303 (" This section

23  does not apply to... (2) the reduction in grade or removal of an employee in the

24  competitive service who is serving a probationary or trial period under an initial

25  appointment"); Fausto, 484 U.S. at 449.

26    Because the CSRA established a comprehensive system for reviewing personnel

27  actions taken against federal employees, the deliberate exclusion of a class of employees

28  prevents those types of employees from seeking review under the CSRA or any other

07cv1010

1   statutory scheme. Id. at 455; see also Weber v. Department of Veterans Affairs, 521
2   F.3d 1061, 1067 (9th Cir. 2008) (holding that where a comprehensive remedial scheme
3   like the CSRA exists and Congress has indicated that no judicial review is available, an
4   individual may not use other federal statutory avenues to obtain review). The absence
5   of a provision allowing these types of employees to obtain judicial review indicates that
6   Congress did not intend for them to have a right to bring these claims before a court.
7   Fausto, 484 U.S. at 448-49 ("It seems to us evident that the absence of provision for
8   these employees to obtain judicial review is not an uninformative consequence of the
9   limited scope of the statute, but rather manifestation of a considered congressional
10  judgment that they should not have statutory entitlement to review....")

11       Plaintiff was a probationary employee at the time that he was terminated.
12  Because the CSRA does not apply to probationary employees, he cannot seek redress
13  of grievances under the act. See 5 U.S.C. § 4303. Furthermore, the Supreme Court
14  has held that classes of employees not included in the CSRA should not have
15  alternative avenues to bring suit available to them due to the preemptive and
16  comprehensive nature of the CSRA. Therefore, Plaintiff is not entitled to bring this
17  action under the CSRA or under any other legal theory. See Weber, 521 F.3d at 1067.

18       Moreover, even assuming that the CSRA did not preempt Plaintiff's claims and
19  Plaintiff could sue Defendant for breach of the CBA outside of the CSRA, Plaintiff is
20  unable to show that he would be entitled to relief. Article 40 of the CBA, which relates
21  to termination for unacceptable performance, specifically excludes probationary
22  employees. (Def.'s Mot. Ex. A at 109.) ("This article applies only to bargaining unit
23  employees who have completed their probationary or trial period, except to the extent
24  prohibited by law") (emphasis added). Plaintiff does not have the right to bring suit
25  against Defendant for claims arising out of his termination because under the CBA he
26  has no remedies for termination based unacceptable performance.

27       Lastly, in a broad attempt to avoid dismissal, Plaintiff claims that granting the
28  motion to dismiss in this case would be "unconscionable and would violate public

-8-

policy." (Plaintiff's Opp at 2:16–17.)  Plaintiff does not offer an explanation or authority for this assertion.  In reply, Defendant claims the opposite is true.  Specifically, given the limits enacted by Congress in Section 4303, Defendant argues that a ruling affirming the agency's discretion to make appropriate decisions concerning retention of probationary employees would further public policy. (*Def's Mot.* at 16–26.)  The Court agrees with Defendant and finds that to rule in the alternative would essentially eliminate the concept of a probationary period.  As such, the Court **DISMISSES** Plaintiff's lawsuit **WITH PREJUDICE**.

### B.   Failure to Exhaust Administrative Remedy

Defendant also argues that even if the CSRA provided Plaintiff with a remedy, he has failed to plead its exhaustion.  Defendant explains that an employee removed for unacceptable performance or for just cause is entitled to administratively appeal the decision to the MSPB. 5 U.S.C. §§ 4303, 7513(d), 7701(a).  An unfavorable decision by the MSPB can be appealed to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(a)(1),(b)(1).  Thus, even if Plaintiff were entitled to judicial review under the CSRA, such review should have been sought with a Federal Circuit.

Plaintiff did not plead facts contradicting this conclusion nor has he provided the Court with any evidence indicating an administrative exhaustion.  Plaintiff does, however, allege that there is "evidence yet to be submitted...." (*Pltf.'s Opp.* at 3:6–7.)  However, this Court already warned Plaintiff that a "failure to adequately plead a claim or legally oppose a future motion may result in a dismissal with prejudice." (Doc. No. 39 at 17:7–9.)  As such, the Court would dismiss Plaintiff's claim in this alternative if it had been deemed necessary.

### C.   Motion to Compel Arbitration

Plaintiff has also filed a motion to compel arbitration under the CBA.  Although the Federal Arbitration Act promotes a liberal policy favoring agreements to arbitrate,

07cv1010

Plaintiff has not shown that he is entitled to arbitration in this case.

As discussed above, the CSRA has wholly occupied the regulatory field with regard to claims made by federal employees regarding matters related to their employment. Fausto, 484 U.S. at 445. The CSRA does not allow probationary employees to pursue remedies within the CSRA or outside it. Id. at 446; 5 U.S.C. § 4303. Therefore, just as Plaintiff's CBA claims are preempted by the CSRA, his request for arbitration is also preempted.

Furthermore, even if Plaintiff were able to bring claims under the CBA despite the CSRA's preemption of the field, the CBA does not allow him to bring a claim arising out of a termination due to unacceptable performance. As previously discussed in this Order, Article 40 of the CBA specifically excludes probationary employees from bringing claims arising out of termination for unacceptable performance. (*Def.'s Mot.* Ex. A at 109.) This provision precludes Plaintiff from bringing his claims in any venue, even before an arbitrator. Therefore, Plaintiff's motion to compel arbitration is **DENIED WITH PREJUDICE.**

IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss and **DISMISSES** Plaintiff's claims **WITH PREJUDICE.** Defendant's motion for summary judgment is **DENIED** as moot. The Court also **DENIES** Plaintiff's motion to compel arbitration **WITH PREJUDICE.** The clerk of the court shall close the district court file.

**IT IS SO ORDERED.**

DATED: March 23, 2009

HON. THOMAS J. WHELAN
United States District Court
Southern District of California

07cv1010